J. DANIEL SPENCER *v.* STAR STEEL
STRUCTURES, INC., ET AL.
(AC 26399)
(AC 26630)

Schaller, Rogers and Peters, Js.

Argued April 20—officially released June 20, 2006

*Bruce D. Tyler*, for the appellants (defendants).

*Carole W. Briggs*, for the appellee (named plaintiff).

*Barbara A. Frederick*, with whom, on the brief, were *Benjamin J. Berger* and *Ffiona M. McDonough*, for the appellee (plaintiff Those Certain Underwriters at Lloyd's of London, Individually Subscribing to Certificate No. 06183).

*Opinion*

PETERS, J. This case concerns the validity of a judgment awarding damages for losses associated with the purchase of a greenhouse that, because of a design defect, partially collapsed in a windstorm. The principal claim in two appeals by the seller and the manufacturer of the greenhouse is that the trial court lacked subject matter jurisdiction either to render a judgment in favor of the buyer or to grant the buyer a prejudgment remedy. This claim is based on the novel proposition that a jurisdictional inference should be drawn from General Statutes § 42a-2-607 (3),[1] which requires a buyer of

---

[1] General Statutes § 42a-2-607 (3) provides in relevant part: "Where a tender has been accepted . . . the buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy . . . ."

accepted goods, in timely fashion, to "notify the seller of breach or be barred from any remedy . . . ." Because we disagree with this interpretation of the statute, we affirm the judgment of the trial court in all respects.

In an amended, multicount complaint[2] filed July 10, 2002, the named plaintiff, J. Daniel Spencer, doing business as Highland Gardens (Spencer), and his insurer, the plaintiff underwriters at Lloyd's of London, sought recovery for the destruction of a combined greenhouse that Spencer had assembled from two greenhouses manufactured by the defendant Star Steel Structures, Inc. (Star), on the advice of a retailer, the defendant W.H. Milikowski, Inc. (Milikowski).[3] The defendants denied their liability and, in their affirmative defenses, alleged that Spencer had failed to mitigate damages.

After a trial to the court, the court found that the greenhouse "was in a defective condition and unreasonably dangerous to the user when it was sold by . . . Milikowski to . . . Spencer. The defect, in this case the design and redesign of the product to incorporate two structures into one, caused the damages suffered by . . . Spencer. The defects existed at the time of sale, and the product was expected to and did reach [Spencer] without substantial change in condition. Further, [Spencer] did not misuse or alter the product in any way prior to its partial destruction on the evening of November 2 through November 3, 1999, due to the

[2] The complaint charged both defendants with liability under the product liability statute, General Statutes § 52-572m, and for breach of warranty under the Uniform Commercial Code, General Statutes §§ 42a-2-313, 42a-2-314 and 42a-2-315. It also charged the seller with liability for breach of contract under General Statutes § 42a-2-301. Two additional counts, for common-law breach of contract and for negligence, were withdrawn during trial, before the court rendered its judgment.

[3] Both Star and Milikowski are controlled by Carl Milikowski and Mark Milikowski, who own Milikoski in its entirety and more than a two-thirds interest in Star.

high wind gusts that evening. After the loss, [Spencer] took all reasonable actions to mitigate damages and consequential losses." Accordingly, the court held that the plaintiffs were entitled to a judgment in their favor.

The court issued two supplemental memoranda of decision in response to motions for articulation filed by the parties. The court declined the defendants' request to articulate its allocation of damages under General Statutes § 52-572h (f), concerning negligence, because it had not adjudicated the plaintiffs' claims under that statute.[4] The court granted Spencer's motion to address the remaining counts of his complaint and resolved all the issues in each count, including those raised by the defendants, in his favor.

Thereafter, the plaintiffs moved for a prejudgment remedy. In opposition, the defendants filed an affidavit arguing, for the first time, that the plaintiffs were barred from any recovery, and hence had not established the probable validity of their claim because Spencer, in violation of § 42a-2-607 (3), had failed to notify Milikowski of any breach of warranty "until approximately a year and a half after the sale when the structure itself failed."[5]

The trial court nonetheless granted the plaintiffs' application for an attachment in the amount of $220,000. Responding to the defendants' motion for articulation, the court rejected their statutory claim on the ground that § 42a-2-607 (3) "does not deal with the issue of a

[4] The court stated that it had based its decision, not on the statute cited by the defendants, but on General Statutes §§ 52-572m and 42a-314. The court added that, even if an issue of comparative responsibility had been pleaded properly, it found "no comparative responsibility or failure to mitigate damages" by the plaintiffs.

[5] Properly, the defendants did not challenge the propriety of an application for a prejudgment remedy that requested security for a judgment on appeal. See *Gagne* v. *Vaccaro*, 80 Conn. App. 436, 451–52, 835 A.2d 491 (2003), cert. denied, 268 Conn. 920, 846 A.2d 881 (2004).

prejudgment remedy pursuant to [General Statutes] § 52-278a et seq., but rather with issues more appropriately considered, if at all, in the underlying appeal from the judgment rendered by the court."

In two appeals that were consolidated for consideration by this court, the defendants challenge both the validity of the underlying judgment in favor of the plaintiffs and the propriety of the attachment of their property. The centerpiece of both appeals is their argument that the court lacked subject matter jurisdiction to render a judgment against them because Spencer had failed to comply with the notice requirement of § 42a-2-607 (3). We disagree.

I

APPEAL FROM THE JUDGMENT ON THE MERITS

In their appeal from the underlying judgment in favor of the plaintiffs, AC 26399, the defendants have raised three issues. They argue that the trial court (1) lacked jurisdiction to adjudicate the plaintiffs' claims under the Uniform Commercial Code because the plaintiffs did not comply with § 42a-2-607 (3), (2) lacked jurisdiction to adjudicate the plaintiffs' claims under the product liability statute because General Statutes § 52-572n (c) excludes recoveries for transactions between commercial parties and (3) made findings that were clearly erroneous. We are not persuaded.

A

General Statutes § 42a-2-607 (3) provides in relevant part that a buyer who has accepted a tender of goods that are defective "must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy . . . ." The defendants maintain that (1) the statute required the plaintiffs to notify them of a defect in the greenhouse before its collapse, (2) the plaintiffs did not

give them such notice and (3) in the absence of timely notice, the statutory language that they would "be barred from any remedy" signifies that the trial court lacked subject matter jurisdiction to adjudicate the plaintiffs' damages claim. We disagree.

At the outset, we note, as the defendants conceded at oral argument in this court, that if § 42a-2-607 (3) provides any shelter from liability under the circumstances of this case, such shelter is limited in its scope. The only party entitled to notice under the statute is "the seller" of the goods. Because Star concededly was not the seller of the goods to Spencer, its liability is unaffected by § 42a-2-607 (3). It is only Milikowski that has standing to defend against liability because of Spencer's alleged failure to give it timely notice of a defect in the greenhouse.

Milikowski's argument under § 42a-2-607 (3) is, nonetheless, flawed because it assumes the existence of a factual predicate that the record does not contain. The trial court made no finding that Spencer failed to provide timely notification of a problem with the greenhouse.[6] See *Stelco Industries, Inc.* v. *Cohen*, 182 Conn. 561, 565–66, 438 A.2d 759 (1980) (purpose of notification is to alert seller that transaction is still troublesome rather than to particularize buyer's entitlement to damages). The defendants did not ask the court to make such a finding. Indeed, they never cited § 42a-2-607 (3)

---

[6] The defendants assume that the record at trial establishes that they did not receive timely notice of problems with the greenhouse. That is not so. The trial court's memorandum of decision states: "Both John [H. Spencer] and J. Daniel Spencer testified that from November, 1998, until November, 1999, they noticed a significant 'sway' in the building structure—especially when there was any significant wind. They indicated that complaints of this concern were made to the defendants on several occasions without result. The defendants denied that these complaints were received by either of them at any time prior to the date of loss—November 2, 1999, through November 3, 1999."

to the court until they filed their opposition to the plaintiffs' application for a prejudgment remedy. Their claim devolves into the proposition that the court had a responsibility, on its own initiative, to make a finding of lack of notice. This is an unpreserved claim of error. "This court will undertake review of unpreserved claims only when the claim is of constitutional magnitude; *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989); or there has been plain error resulting in a manifest injustice that has affected the fairness of the judicial proceeding. Practice Book § 60-5; *Sorrentino* v. *All Seasons Services, Inc.*, 245 Conn. 756, 768, 717 A.2d 150 (1998)." *Kalas* v. *Cook*, 70 Conn. App. 477, 482, 800 A.2d 553 (2002). Neither of these exceptions is applicable in this case.

To sidestep this procedural obstacle to their notice claim, the defendants ask us to attach jurisdictional significance to the notice provision contained in § 42a-2-607 (3). In their view, without a finding that a seller has received timely notice of a defect in accepted goods, a court lacks subject matter jurisdiction to afford a remedy to a buyer who is injured by the seller's breach. This, too, is an argument that was not presented at trial, but a challenge to a court's subject matter jurisdiction can be raised at any time. *Kozlowski* v. *Commissioner of Transportation*, 274 Conn. 497, 502, 876 A.2d 1148 (2005); *Santana* v. *Hartford*, 94 Conn. App. 445, 457, 894 A.2d 307 (2006).

The defendants cite a number of cases that stand for the proposition that a court may not adjudicate a controversy over which it lacks subject matter jurisdiction, but none of those cases applies that maxim to a notice provision in the Uniform Commercial Code. The fact that, with proper pleading, a buyer must establish that he gave notice of a defect in accepted goods as a condition to his right to recover damages from the seller does not establish that the *notice provision implicates*

the subject matter jurisdiction of the court. As our Supreme Court has explained, "[s]ubject matter jurisdiction involves the authority of a court to adjudicate the *type of controversy* presented by the action before it. 1 Restatement (Second), Judgments § 11. A court does not truly lack subject matter jurisdiction if it has competence to entertain the action before it. . . . Once it is determined that a tribunal has authority or competence to decide the class of cases to which the action belongs, the issue of subject matter jurisdiction is resolved in favor of entertaining the action." (Citation omitted; emphasis added; internal quotation marks omitted.) *Amodio* v. *Amodio*, 247 Conn. 724, 727–28, 724 A.2d 1084 (1999); see also *Monroe* v. *Monroe*, 177 Conn. 173, 185, 413 A.2d 819, appeal dismissed, 444 U.S. 801, 100 S. Ct. 20, 62 L. Ed. 2d 14 (1979). We know of no case that holds that the Superior Court lacks plenary authority to enforce the provisions of the Uniform Commercial Code, and the defendants have cited none.

B

The defendants maintain that even if the trial court had subject matter jurisdiction, the court improperly afforded relief to Spencer under the first count of his complaint, in which he sought a remedy under the product liability statute, § 52-572m. Although subsection (b) of this statute defines "product liability claim" broadly to include actions for "property damage caused by the . . . design . . . of any product," General Statutes § 52-572n (c) excludes "commercial loss caused by a product" from this definition. Such claims must, instead, be brought under the Uniform Commercial Code. Because Spencer was a commercial buyer of the defendants' products, the defendants claim that he was not entitled to a judgment on the first count of the

complaint, which was based on the product liability statute.

The defendants properly brought this issue to the attention of the trial court. In response to their motion for articulation, the court explained that its award of damages was based not only on the product liability count but also on the count based on General Statutes § 42a-2-315 of the Uniform Commercial Code.

In their brief to this court, the defendants reiterate the claim they made at trial without addressing the merits of the trial court's response. We decline to review this claim because it has not been briefed adequately. "[W]e are not required to review issues that have been improperly presented to this court through an inadequate brief. . . . Analysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failing to brief the issue properly." (Internal quotation marks omitted.) *Ward* v. *Greene*, 267 Conn. 539, 546, 839 A.2d 1259 (2004).

C

The defendants' final claim challenges a number of findings of fact by the trial court. In accordance with the established standard of review for such findings, they urge us to find that the court's findings with respect to negligence, notice and expert testimony were clearly erroneous. See *Cornfield Point Assn.* v. *Old Saybrook*, 91 Conn. App. 539, 564, 882 A.2d 117 (2005). None of these claims warrants extensive discussion.

The defendants fault the trial court for failing to find that Spencer's claim in negligence was unsustainable because of his own negligence. The defendants' argument is belied by the record. Although the plaintiffs' complaint originally contained a negligence count, that count, as the trial court noted in its articulation, was

withdrawn before the court rendered its judgment. The defendants did not raise a negligence defense to any other count in the complaint.

The defendants contend that the trial court's finding that Spencer notified Milikowski of problems with the greenhouse was contradicted by other testimony. Although the court itself noted this conflict, the defendants did not ask the court to resolve this inconsistency. On this record, there is, therefore, no appealable issue.

Finally, the defendants argue that the trial court improperly found the testimony of the plaintiffs' expert witness more persuasive than that of their expert witness. They do not claim that relevant evidence was excluded from the court's consideration. Even more significant, they do not address the specific reasons given by the court for finding the opinions of their expert unpersuasive.[7] This claim is frivolous.

We conclude, therefore, that the trial court properly rendered judgment in favor of the plaintiffs on their claim that the defendants bore fiscal responsibility for the partial collapse of the greenhouse that the defendant Milikowski recommended that Spencer build with component parts manufactured by Star. We note that the defendants do not challenge the propriety of the court's calculation of the plaintiffs' damages. Accordingly, the judgment in AC 26399 is affirmed.

---

[7] The court found that the photographs of the greenhouse after its partial collapse demonstrated the fallacy in the opinions and theory of the defendants' expert, stating that "[t]he entire underpinning of this theory and the opinions of [the defendants' expert] are belied by the fact that on the morning of November 3, 1999, when photographs of the building were taken by Mr. Spencer, all of the poly on the east end wall gable was still intact. It does not appear that [the defendants' expert] had ever studied these photographs prior to his testimony in court or perhaps was unaware, due to the mistakes in directions contained in his report, that they served to destroy the factual basis of his opinions."

II

## APPEAL FROM THE GRANTING OF THE APPLICATION FOR A PREJUDGMENT REMEDY

In a separate appeal, AC 26630, the defendants challenge the validity of the decision of the trial court granting the plaintiffs' application for a prejudgment remedy to enable them to secure their judgment during the pendency of the defendants' appeal. They claim that the court's decision was improper because the plaintiffs' application failed, in two respects, to comply with the statutory requirements for the issuance of a prejudgment remedy that are stated in § 52-278a et seq. We disagree.

The defendants' first claim is that the trial court should not have granted the plaintiffs' application without affording them the opportunity to be heard on their claim that they had a defense to liability because of the plaintiffs' alleged failure to comply with the requirements of § 42a-2-607 (3). The court declined to consider the merits of this claim. It held that "[s]ection 42a-2-607 (3) does not deal with the issue of a prejudgment remedy pursuant to § 52-278a et seq., but rather with issues more appropriately considered, if at all, in the underlying appeal from the judgment rendered by the court."

Under the circumstances of this case, we need not decide what defenses a judgment debtor properly may raise to contest the granting of a prejudgment remedy. We already have observed that the defendants failed to raise an issue about the notice requirements of § 42a-2-607 (3) during the course of the trial and have held that Spencer's alleged failure to give such notice did not implicate the subject matter jurisdiction of the court. On this record, there was, therefore, nothing of substance for the court to consider before granting the plaintiffs' application.

The defendants' second claim is that the application for the prejudgment remedy was improperly granted because the application was procedurally defective. General Statutes § 52-278c (e)[8] requires such an application to be accompanied by a notice form advising a defendant of his right to contest an application for a prejudgment remedy at a hearing. The defendants maintain that the plaintiffs' failure to comply with this notice requirement deprived them of their right to a fair hearing and to due process.

The plaintiffs concede that they did not attach a notice form to their application at the time that the application was filed. Nonetheless, it is undisputed that they notified the defendants of its contents six days in advance of the hearing and saw to it that the defendants' counsel had a copy of the notice four days before the hearing.

The defendants participated in the hearing on the prejudgment remedy when it was held. Other than raising a nominal claim of prejudice, they have failed to

---

[8] General Statutes 52-278c (e) provides: "An application for a prejudgment remedy shall be accompanied by a notice and claim form, in such form as may be prescribed by the Office of the Chief Court Administrator, containing the following language: 'YOU HAVE RIGHTS SPECIFIED IN THE CONNECTICUT GENERAL STATUTES, INCLUDING CHAPTER 903a, THAT YOU MAY WISH TO EXERCISE CONCERNING THIS APPLICATION FOR A PREJUDGMENT REMEDY. THESE RIGHTS INCLUDE THE RIGHT TO A HEARING: (1) TO OBJECT TO THE PROPOSED PREJUDGMENT REMEDY BECAUSE YOU HAVE A DEFENSE TO OR SET-OFF AGAINST THE ACTION OR A COUNTERCLAIM AGAINST THE PLAINTIFF OR BECAUSE THE AMOUNT SOUGHT IN THE APPLICATION FOR THE PREJUDGMENT REMEDY IS UNREASONABLY HIGH OR BECAUSE PAYMENT OF ANY JUDGMENT THAT MAY BE RENDERED AGAINST YOU IS COVERED BY ANY INSURANCE THAT MAY BE AVAILABLE TO YOU; (2) TO REQUEST THAT THE PLAINTIFF POST A BOND IN ACCORDANCE WITH SECTION 52-278d of THE GENERAL STATUTES TO SECURE YOU AGAINST ANY DAMAGES THAT MAY RESULT FROM THE PREJUDGMENT REMEDY; (3) TO REQUEST THAT YOU BE ALLOWED TO SUBSTITUTE A BOND FOR THE PREJUDGMENT REMEDY SOUGHT; AND (4) TO SHOW THAT THE PROPERTY SOUGHT TO BE SUBJECTED TO THE PREJUDGMENT REMEDY IS EXEMPT FROM SUCH A PREJUDGMENT REMEDY.' "

particularize the manner in which the delay in their receipt of the notice caused them to suffer any harm. Notably, they did not request a continuance to enable them to present more fully their objections to the issuance of the prejudgment remedy.

On the record before us, we conclude that the trial court properly granted the plaintiffs' application for a prejudgment remedy. The defendants did not present to the court a persuasive substantive ground for denial of the application. We may construe the court's decision to grant the application as an implicit finding that the defendants were not prejudiced by the short delay in their receipt of notice of the hearing on the application.

The judgment is affirmed.

In this opinion the other judges concurred.